IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EDDIE WILKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:14CV693-WKW |
| | ) | |
| STEPHAN GOZDAN, | ) | |
| Chief Financial Officer, Cenlar, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER and RECOMMENDATION OF THE MAGISTRATE JUDGE**

By order entered on July 25, 2014, the District Judge has referred this case to the undersigned for action or recommendation on all pretrial matters. (Doc. # 5). Plaintiff Eddie Wilkerson, proceeding *pro se*, has filed a motion for leave to proceed *in forma pauperis* in this action (Doc. # 2).  Upon consideration of the motion, it is

ORDERED that the motion is GRANTED.  However, upon review of the complaint, the court concludes that plaintiff's claims are due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), prior to service of process, as plaintiff has failed to state a claim on which relief may be granted.[1]

Thus, it is further

ORDERED that service of the summons and complaint is STAYED pending further

---

[1] The statute provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal– (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

order of the court directing such service.

## PLAINTIFF'S CLAIMS

Wilkerson brings this action against defendants Stephen Gozdan, Chief Financial Officer of Cenlar,[2] and Robert D. Stiles, Chief Financial Officer of Nationstar Mortgage. The facts he alleges in support of his claims are as follows:

> I acknowledge Cenlar mortgage with account number 0031606221 on the house at 4343 Longleaf Drive Montgomery, Alabama. I also acknowledge Nationstar as the Deed holder and they contracted Cenlar to collect the mortgage.
>
> On 12/3/13 I mailed a priority letter with tracking number 9114901123086525044717 to Stephen Gozdan with a Bank Giro Credit slip and Promissory Note inside as payment for my house with account number 0031606221.
>
> In the proceeding weeks I mailed Stephen Gozdan three letters ten (10) days apart asking them to credit my account or give me my Bank Giro Credit slip and Promissory Note back and he never did.
>
> * * * * *
>
> On 4/17/14 Stephen Gozdan received a letter delivered to them by UPS with tracking number 1Z3E65A413953-4579 and inside was a notarized "*Writ in the Nature of Discovery and Disclosure*" [PLPY 00113 PAGE 0276-0277].
>
> In the Writ I asked for twelve (12) specific questions that they must answer so that we can clear up the account.
>
> Stephen Gozdan was given twenty (20) days to answer the "*Writ in the Nature of Discovery and Disclosure*" and did not.
>
> On two (2) attempts I mailed Stephen Gozdan an "*Affidavit of Fact: Notice of*

---

[2] Plaintiff refers to this defendant as "Godzan" elsewhere in his complaint. The court adopts the spelling of this defendant's surname set out by plaintiff in the style of his complaint.

> *Default Judgment*" [PLPY 0013 PAGE 0278-0279] and the letter were returned as moved. I used the same address as the other letters.
>
> Robert D. Stiles received a letter from USPS with tracking number 9505510200793112065277 containing copies of "*Writ in the Nature of Discovery and Disclosure*" and "*Affidavit of Fact: Notice of Default Judgment*" on 5/9/14.
>
> On 6/6/14, I wrote Robert D. Stiles to inform him of the move of Cenlar and that I will be dealing with him from now on. I gave him to 6/21/14 to release me from a debt that cannot be lawfully proven, clear Erica and Eddie Wilkerson credit history of all negative marks, and mail me the Deed to the house at 4343 Longleaf Drive Montgomery, Alabama. He never answered my letter with tracking number 9405510200829210849997 from USPS.
>
> When Nationstar contracted with Cenlar they became co-conspirators against Eddie Wilkerson.
>
> On 7/15/14, I received a letter from Andy Saag of Sirote & Permitt, PC, a firm representing Nationstar and Cenlar, that the house at 4343 Longleaf Drive is going up for foreclosure action on August 12, 2014.

(Complaint, Doc. # 1, pp. 2-3)(bracketed citations in original).[3] Plaintiff quotes the Uniform Commercial Code for the proposition that "*money is not limited to legal tender*[,]" a Federal Reserve Bank of Chicago pamphlet's explanation that U.S. paper currency is not a commodity and, "[i]ntrinsically, a dollar bill is just <u>a piece of paper</u>[.]" (Id., p. 2)(emphases in original). He then cites cases that hold, purportedly, that federal reserve notes are "only a promise to pay," not "good and lawful money of the United States," and "'do not operate as payment in the absence of an agreement that they shall constitute payment.'" Id., pp. 2-3.[4]

---

[3] The court here quotes only the allegations of *fact* that form the basis for plaintiff's claims.

[4] The cases that plaintiff cites and quotes do not support his contentions. While they are not binding or directly on point, their holdings conflict with the premise underlying plaintiff's claims

3

Plaintiff contends that "[a]ny documents transmitted in behalf of the Debtor to discharge debt liability in behalf of the Debtor is in full accord with House Joint Resolution 192, Public Law 73-10, and sections 3-419, 1-104, and 10-104 of the Uniform Commercial Code. (Id., p. 3).

Plaintiff invokes the court's federal question subject matter jurisdiction. (See Complaint, p. 1, "Jurisdiction"). He asserts a civil RICO conspiracy claim against Gozdan and Stiles (based on their alleged money laundering, wire and mail fraud, and "Frauds and Swindles"),[5] a breach-of-fiduciary-duty claim pursuant to 15 U.S.C. § 80a-35 for Gozdan's and/or Stiles' failure either to credit plaintiff's account with his payment by Bank Giro credit slip and promissory note or to return those documents to him,[6] and a claim pursuant to Rule

---

– *i.e.*, that the "Bank Giro" electronic transfer form and promissory note plaintiff sent to defendant Gozdan satisfied plaintiff's debt on his mortgage loan. See Eckert v. Commissioner of Internal Revenue, 42 F.2d 158 (2nd Cir. 1930)(concluding that a taxpayer's personal promissory note to a bank in satisfaction of a corporate debt did not constitute a cash payment giving rise to an allowable tax deduction); Fidelity Savings State Bank v. Grimes, 131 P.2d 894 (Kan. 1942)(since Kansas statute required payment of insurance premium in cash, the plaintiff bank was not a holder in due course of a promissory note accepted for payment of an insurance premium); Raine v. State, 226 S.W. 189 (Tenn. 1920)(rejecting the contention of a banker convicted of fraudulent breach of trust, and who had admitted allowing general funds of the bank to be used to pay his personal obligations, that the trial court had erred by refusing to instruct the jury that he could only be convicted if he "obtained from the bank legal tender in the form of good and lawful money of the United States"); Blackshear v. Harrell, 12 S.E.2d 328 (Ga. 1940)(under Georgia law, a promissory note does not extinguish an indebtedness "until that note is actually paid," unless the parties agree otherwise).

[5] See Complaint, p. 1 (asserting violations of 18 U.S.C. §§ 1962, 1341, 1343, 1349, and 1956); id., p. 3 ("Legal Claims"). While plaintiff does not cite 18 U.S.C. § 1964(c), the court construes the complaint liberally in view of plaintiff's status as a *pro se* litigant.

[6] It appears from the "Facts" and "Legal Claims" sections of plaintiff's complaint that he brings this claim against Gozdan only. (Complaint, pp. 2-3). However, he seeks damages from Stiles for "Breach of Fiduciary duty for not accepting Bank Giro Credit Slip" and "for not accepting Promissory Note." (Id., p. 4, ¶¶ 10-11).

26 of the Federal Rules of Civil Procedure for the defendants' failure to answer his "Writ in the Nature of Discovery and Disclosure." (Complaint, pp. 1, 3). Plaintiff seeks injunctive relief including, *inter alia*, an order "stop[ping] these abuses of the colorable authority by the Defendants[,]" and a judgment for compensatory and punitive damages in the amount of $3,800,000 against each defendant. (Id., pp. 4-5).[7]

## STANDARD OF REVIEW

To state a claim, a complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Twombly, 550 U.S. at 555). "[C]omplaints ... must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Randall v. Scott, 610 F.3d 701, 707 n. 2 (11th Cir. 2010)(internal quotation marks omitted). In reviewing a complaint to determine whether

---

[7] Plaintiff refers to "due process" and "equal protection" within his demand for relief and jurisdictional statement – but not within the "Legal Claims" section or elsewhere in his complaint. (Complaint, p. 1 and p. 4 at ¶ 1). Thus, it does not appear that plaintiff claims that the defendants have violated his constitutional rights. Since plaintiff's allegations of fact include no hint of state action (or that the defendants are federal officials), the court does not construe the complaint to include constitutional claims. To the extent that plaintiff demands prosecution of the defendants for federal crimes (see Complaint, p. 4, ¶ 3), plaintiff lacks standing to seek such relief. See Linda R.S. v. Richard C., 410 U.S. 614, 619 (1973)("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); Gibson v. Gains, 2006 WL 858336 (11th Cir. Apr. 4, 2006)("[T]o the extent Gibson raises criminal allegations against the defendants, Gibson lacks standing to raise such claims and the district court properly dismissed them.).

it states a claim, the court first "eliminate[s] any allegations in the complaint that are merely legal conclusions" and, then, determine[s] whether the well-pleaded factual allegations of the complaint – assuming their veracity – "'plausibly give rise to an entitlement to relief.'" See American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)(citing Iqbal, 129 S.Ct. at 1950). Additionally, while the court construes *pro se* pleadings liberally, it "may not act as *de facto* counsel or 'rewrite an otherwise deficient pleading in order to sustain an action.'" Porter v. Duval County School Bd., 406 F. App'x. 460, 462 (11th Cir. 2010)(unpublished opinion; citation omitted).

## DISCUSSION

### "Rule 26" Claim

Plaintiff seeks compensatory and punitive damages pursuant to "Rule 26" (see Complaint, p. 4, ¶ 9) for the defendants' failure to respond to the twelve questions in plaintiff's notarized "Writ in the Nature of Discovery and Disclosure" (id., p. 3). Rule 26 is within the Federal Rules of Civil Procedure. Those rules "govern the procedure in ... civil actions and proceedings in the United States district courts[.]" Fed. R. Civ. P. 1. Nothing in plaintiff's complaint suggests that he sent his "writ" to the defendants in connection with an ongoing lawsuit in a federal district court; thus, defendants' obligation to respond to plaintiff's "writ" is not governed by Rule 26. Even if plaintiff were to allege that he mailed the "writ" as a discovery request in connection with a then-pending federal court action, he would not state an actionable claim. Discovery violations may be enforced through motions

to compel and motions for sanctions filed the appropriate district court pursuant to the Federal Rules of Civil Procedure; these rules do not provide a private cause of action for their violation.  See Liberty Leather Corp v. Callum, 653 F.2d 694 (1st Cir. 1981)(finding no error in district court's refusal to allow plaintiff to amend its complaint to add a claim for "tortious interference" with its discovery efforts); Cannon v. Boeing Co., 2013 WL 4054502, *3 (W.D. Wash Aug. 9, 2013)("[N]o civil cause of action exists for the failure to produce documents in response to a subpoena request in a different case.")(citing Zigmund v. Tetreault, 1997 WL 695502, *3 (D. Conn. Oct. 10, 1997)); Zigmund, 1997 WL 695502 at *3 ("The plaintiff has filed this action to address discovery problems he encountered in another case.  There is no cognizable cause of action for the failure or refusal to comply with a discovery request[.]"); Marozsan v. U.S., 849 F. Supp. 617, 645 (N.D. Ind. 1994)("The third amended complaint further alleges that the defendants have failed or refused to comply with Marozsan's discovery requests.  This claim is frivolous.  There is no recognized civil cause of action for the failure or refusal of a party to provide discovery.  Rule 37 of the Federal Rules of Civil Procedure, not a separate lawsuit, represents the proper and available remedy for an adversary's non-compliance with discovery requests."). Thus, plaintiff's "Rule 26" claim is due to be dismissed with prejudice.

### Breach of Fiduciary Duty Claim

Plaintiff asserts that defendants are liable to him for breach of fiduciary duty pursuant to 15 U.S.C. § 80a-35 for their failure to accept his Bank Giro credit slip and his promissory

note as payment of his mortgage loan or, in the alternative, for their failure to return these documents to him. The federal statute on which plaintiff relies applies to investment companies and their officers. 15 U.S.C. Chapter 2D, § 80a-1, *et seq*. Plaintiff alleges no facts suggesting that either Cenlar or Nationstar is an investment company as defined in 15 U.S.C. § 80a-3; thus, his complaint fails to state a 15 U.S.C. § 80a-35 claim for breach of fiduciary duty.[8]

### Plaintiff's "Gold Standard" Claims

It is apparent from the face of the complaint that, except for his "Rule 26" claim, all of plaintiff's claims rest on the faulty premise that plaintiff's mortgage loan debt was satisfied by plaintiff's tender of a "Bank Giro" credit slip and promissory note. See Complaint, p. 3 ("Any documents transmitted in behalf of the Debtor to discharge debt liability in behalf of the Debtor is in full accord with HJR-192 (June 5, 1933), Public Law 73-10, UCC 3-419, 1-104, and 10-104."). Plaintiff is not the first to advance this untenable legal theory. In Sanford v. Robins Federal Credit Union, 2012 WL 5875712 (M.D. Ga. Nov. 20, 2012), the court described similar theories advanced by plaintiffs seeking to avoid debt repayment:

---

[8] Even assuming that any state law claims arising from plaintiff's mortgage loan contract are governed by Alabama law, plaintiff alleges no special circumstances that might give rise to a fiduciary duty under Alabama law. In general, a creditor-debtor relationship between a bank and its customer does not give rise to a fiduciary duty on the part of a bank. See Flying J Fish Farm v. Peoples Bank of Greensboro, 12 So.3d 1185, 1190-91 (Ala. 2008)(bank and its loan officers owed no fiduciary duty to borrowers). Similarly, absent special circumstances, Alabama law recognizes no fiduciary duty on the part of a loan servicer toward a borrower. Selman v. CitiMortgage, 2013 WL 838193, * 10-11 (S.D. Ala. Mar. 5, 2013).

[T]he Plaintiff's reference to H.J. Res. 192, 73rd Cong. (1933), enacted by Pub.L. No. 73-10, 48 Stat. 112-13 (1933), is also insufficient to state a claim upon which relief can be granted.  House Joint Resolution 192, titled, "To assure uniform value to the coins and currencies of the United States," states that obligations requiring payment "in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby" are against public policy, and that U.S. currency is legal tender for all debts.  See H.J.R. Res. 192, 73d Cong. (1933); see also Bryant v. Wash. Mut. Bank, 524 F.Supp.2d 753, 759 & n .9 (W.D.Va. 2007); McLaughlin v. Citifinancial Auto Credit, Inc., 2010 WL 2377089 at *6 (D. Conn.).  Enactment of this resolution by Public Law 73–10 suspended the gold standard in the United States.  See McLaughlin, 2010 WL 2377089 at *6; Johnson v. United States, 79 Fed. Cl. 769, 774–75 (2007).  The Plaintiff declares that presentment of the electronic funds transfer instruments "discharged [his] debt upon receipt of the instrument" and that his "[p]ayment was in full accord with" the resolution and public law.

\* \* \* \* \*

To some extent, it appears the Plaintiff hopes to advance a watered-down version of claims other plaintiffs have unsuccessfully attempted via Public Law 73-10, such as the "vapor money" theory, "unlawful money" theory, or "redemption" theory.  See McLaughlin v. CitiMortgage, Inc., 726 F.Supp.2d 201 (D.Conn. 2010)(discussing these theories in depth and collecting cases that "universally and emphatically" reject them).  Such claims are "equal parts revisionist legal history and conspiracy theory," Bryant, 524 F.Supp.2d at 758, and share a common thread in their use by plaintiffs seeking to avoid debt repayment.  These theories appear to all somehow rely on various supposed consequences flowing from the 1933 suspension of the gold standard.

For example, one ten[et] of "redemption" theory suggests that the United States has been bankrupt since suspending the gold standard in 1933, and that, as a result, the dollar is nonredeemable.  Citizens thus became creditors for a bankrupt system, and the Federal Reserve Note became a debt note with no intrinsic value – or so the story goes.  McLaughlin, 726 F.Supp.2d at 211.  Another variation suggests that when an individual executes a promissory note in favor of a bank, he has actually provided the bank "money."  The bank then deposits this "money" into its own account, lists it as an asset on its ledger, and lends it back to individual.  Through bookkeeping procedures, the bank has supposedly created money even though it does not actually have gold-backed

9

> funds available to lend, and the note is thus void from the outset.  See, e.g., Rudd v. KeyBank, N.A., 2006 WL 212096 (S.D. Ohio).
>
> * * * * *
>
> Courts have widely rejected arguments seeking relief pursuant to theories based on Public Law 73-10.  See McLaughlin, 726 F.Supp.2d at 214 (collecting cases). This Court now does the same: To whatever extent the Plaintiff appeals to Public Law 73-10 as the basis for this action, he has failed to state a claim upon which relief can be granted.

Sanford, 2012 WL 5875712 at *3-4; see also Matchynski v. Ocwen Loan Servicing, 2014 WL 202625 (S.D. Cal. Jan 16, 2014)(holding that plaintiff's allegation of payment pursuant to House Joint Resolution 192 and Public Law 73-10 by way of an electronic funds transfer slip did not allege "tender" (or ability to tender the amounts owed) as required to state a quiet title claim; concluding that UCC 3-103 and 3-104 and the corresponding California statutes do not require the lender to accept the EFT form as payment).

Plaintiff "acknowledge[s]" the mortgage loan account at issue (Complaint, p. 2) and does not allege that he has satisfied his obligation to repay his loan by any means other than the Bank Giro credit slip and promissory note (see id., pp. 3-4). Plaintiff's breach of fiduciary duty claim[9] and his civil RICO claim – including the alleged underlying predicate criminal acts of fraud and money laundering – arise from the defendants' refusal to credit the "Bank

---

[9] Plaintiff alleges that Gozdan breached his fiduciary duty to plaintiff by failing to credit his account with payment or return the documents to him, but he does not seek an order enjoining Gozdan to return the documents.  Thus, it appears that plaintiff's contention is that by failing to return the documents to him, Gozdan has accepted the documents as payment on plaintiff's account.  Except as to his "Rule 26" claim, the relief plaintiff demands in this action arises from his "gold standard" theory.  (See Complaint, pp. 3-4).

Giro" slip and promissory note as payment of plaintiff's mortgage loan obligation. The court cannot conclude that defendants were obligated, under the law plaintiff cites or otherwise, to do so.[10] Defendants' conduct, as set forth in plaintiff's complaint, does not give rise to an actionable claim.[11]

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge: (1) that to the extent plaintiff asserts a claim for criminal prosecution of the defendants, such claim be DISMISSED without prejudice for lack of jurisdiction, as plaintiff lacks standing to pursue it; and (2) that plaintiff's remaining claims be DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) – without an opportunity for amendment[12] – for failure to

---

[10] Plaintiff seeks a judgment for compensatory and punitive damages "payable in lawful money." (Complaint, pp. 4-5). While the court does not rely on this demand for payment "in lawful money" in evaluating plaintiff's claims, the demand suggests that plaintiff may not be committed fully to the legal theory he advances in his complaint.

[11] Plaintiff also fails to allege fraud with the particularity required by Rule 9, and his allegations of fact are insufficient to demonstrate either an agreement to engage in a criminal conspiracy or the commission of any unlawful predicate act. However, in view of the court's conclusion that plaintiff's claims rest on a frivolous legal premise, the court does not address these additional deficiencies in plaintiff's complaint.

[12] The court cannot discern an actionable claim, under any state or federal law, that might arise from defendants' alleged conduct. Because plaintiff's claims rest either on plaintiff's frivolous "gold standard" theory and defendants' failure to accept "payment" in accordance with it, or on a "discovery" violation that does not give rise to a private cause of action, the defects in plaintiff's complaint cannot be cured by amendment. See Sanford, 2012 WL 5875712 at *5 n. 5 ("Given the ... general frivolity of claims asserted pursuant to Public Law 73-10, any amendments to the Complaint related to these purported causes of action would be futile and non-curative. Therefore, none will be permitted."). If plaintiff believes that he, in fact, has an actionable claim against these defendants based on his *actual* payment of his mortgage debt obligation or on other facts not alleged in the present complaint, he may so inform the court by objection to this recommendation. The court

state a claim on which relief may be granted.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the plaintiff. The plaintiff may file any objections to this Recommendation on or before August 12, 2014. Any objections must specifically identify the findings in the Magistrate Judge's Recommendation to which the plaintiff objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 29th day of July, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

advises plaintiff that any objection he may file to this Recommendation is subject to Rule 11 of the Federal Rules of Civil Procedure. That rule sets forth specific requirements for representations made to the court, the violation of which may result in the court's imposition of sanctions. Plaintiff may review the rule at the office of the Clerk of Court; it is also available on the website of the United States Courts (http://www.uscourts.gov/RulesAndPolicies/rules/current-rules.aspx).